## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**WANDA CHENEVERT, et al.**                    **CIVIL ACTION**

**VERSUS**                                                     **NO. 12-2099**

**ALGIERS CHARTER SCHOOL ASSOCIATION,**    **SECTION: "G"(3)**
**INC., et al.**

## ORDER AND REASONS

Before the Court is Defendants Algiers Charter School Association ("ACSA") and Monica

Boudouin's ("Boudouin") (collectively "Defendants") "Motion to Dismiss Under Rule 12(b)(5),"[1]

wherein Defendants seek dismissal without prejudice of plaintiffs' claims for failure to timely serve

them. After considering the complaint, the pending motion, the memorandum in support, the

opposition, the reply, the record, and the applicable law, the Court will deny the pending motion.

## I. Background

### A. Factual Background

#### 1. Allegations of Wanda Chenevert

Plaintiff Wanda Chenevert ("Chenevert") is a Caucasian female and was hired by ACSA on

or about December 10, 2005 as a kindergarten teacher at Dwight D. Eisenhower Academy of Global

Studies ("Eisenhower").[2] Defendant Boudouin was employed as the principal of Eisenhower and is

an African-American woman.[3] In 2007, Chenevert was promoted to the administrative position of

---

[1]  Rec. Doc. 15.

[2]  Rec. Doc. 1 at ¶¶ 3, 7.

[3]  *Id.* at ¶ 6.

"Master Teacher."[4] At the beginning of Chenevert's second year of employment as Master Teacher, Boudouin was assigned as principal of Eisenhower.[5]

Chenevert claims that at the first meeting between her and Boudouin, Boudouin "told Ms. Chenevert she could have brought 'her own people' in to take her job but that she had decided to let Ms. Chenevert keep her job."[6] However, Plaintiff alleges that throughout the 2008-09 and 2009-10 school years, she was "harassed, humiliated and publicly embarrassed on numerous occasions" by Boudouin, because she was Caucasian.[7]

In July of 2010, Chenevert claims that she was informed that she would be reassigned to new grade levels, which would result in her no longer being eligible for certain mandatory salary increases that she had previously received as a result of attaining National Board Certification.[8] Chenevert also avers that as Chenevert's replacement, Boudouin "hired an African American teacher who was not even certified to teach pre-kindergarten or kindergarten, and who was therefore unqualified for that position."[9] Chenevert contends that racial harassment continued and that her pleas to more senior employees within ACSA about her reassignment were "to no avail."[10]

---

[4] *Id.* at ¶ 8.

[5] *Id.* at ¶ 14.

[6] *Id.* at ¶ 15.

[7] *Id.* at ¶ 16.

[8] *Id.* at ¶¶ 22-23.

[9] *Id.* at ¶ 25.

[10] *Id.* at ¶¶ 31-32.

Chenevert claims that due to the reassignment and the alleged harassment, she was constructively terminated and/or subjected to a hostile work environment.[11] Chenevert maintains that in November 2010 she "was forced to obtain employment at another school at a much lower rate of pay because of the scarcity of jobs available during the school term."[12]

### 2. Allegations of Monica Knauer

Plaintiff Monica Knauer ("Knauer"), also a Caucasian woman, was hired by ACSA in December 2005 as a Master Teacher.[13] She similarly claims that she was frequently harassed and threatened by Boudouin on account of her race.[14] On May 24, 2010, Knauer was notified that she was terminated from her employment because she was a "disgruntled employee."[15]

### B. Procedural Background

Prior to filing suit in this Court, Chenevert and Knauer (collectively, "Plaintiffs") timely filed charges of employment discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), and on or about May 16, 2012, the EEOC issued each party a Notice of Right to Sue letter, which they both received on May 19, 2012.[16] On August 15, 2012, Plaintiffs filed suit in this action pursuant to Title VII of the Civil Rights Act and 42 U.S.C. § 1981, and the matter was assigned to Judge Helen G. Berrigan, Section "C," but was immediately reassigned to Judge Jane Triche Milazzo, Section "H."

---

[11] *Id.* at ¶¶ 33-34.

[12] *Id.* at ¶ 35.

[13] *Id.* at ¶ 41.

[14] *Id.* at ¶ 45.

[15] *Id.* at ¶ 47.

[16] *Id.* at ¶¶ 56-57.

3

On November 14, 2012, Magistrate Judge Knowles issued an order informing Plaintiffs that they were required to report in person on the status of this case "and show cause why service has not been completed and/or why this matter should not be dismissed for failure to prosecute."[17] This call docket was continued on December 5, 2012 and January 9, 2013, with the Magistrate Judge notifying Plaintiffs of their failure to serve Defendants in each order.[18] Plaintiffs requested summons issued as to all defendants on February 5, 2013.[19] Summons was issued on February 6, 2013, and returned as executed on April 8, 2013 as to all defendants.[20] On April 24, 2013, Defendants filed the pending motion.[21] Plaintiffs filed an opposition on May 28, 2013.[22] With leave of court, Defendants filed a reply.[23]

On May 28, 2013, Plaintiffs filed a motion seeking an extension of time to serve Defendants,[24] and Defendants opposed the motion.[25] On July 8, 2013, Judge Milazzo denied Plaintiffs' motion, reasoning that it raised the same issues pending before the court in Defendants'

---

[17] Rec. Doc. 5.

[18] *See* Rec. Doc. Nos. 6, 7.

[19] Rec. Doc. 8.

[20] Rec. Doc. Nos. 10, 13, 14.

[21] Rec. Doc. 15.

[22] Rec. Doc. 26.

[23] Rec. Doc. 32.

[24] Rec. Doc. 27.

[25] Rec. Doc. 30.

motion to dismiss.[26] On July 19, 2013, Judge Milazzo disqualified herself from acting in this case, and the matter was transferred to Section "G."[27]

## II. Parties' Arguments

### A. Defendants' Arguments in Support of Dismissal

In support of the pending motion, Defendants note that they were served with summons on April 5, 2013, more than seven months after the filing of the complaint and 113 days beyond the deadline imposed under Federal Rule of Civil Procedure 4(m).[28] Further, Defendants emphasize that Plaintiffs only first took steps toward service on January 2, 2013, after two call docket notices and 21 days after their deadline to serve Defendants.[29] As such, Defendants argue that under Rule 4(m), Plaintiffs must show "good cause" to avoid dismissal without prejudice.[30] Defendants contend that there is no good cause here and dismissal is warranted based on "the excessive delay of more than seven months from filing this suit, their failure to seek an extension prior to the expiration of the 120-day deadline, their notice of possible dismissal through the Court's docket calls, and the prejudice that could result to Defendants."[31]

### B. Plaintiffs' Arguments in Opposition to Dismissal

In opposition to the pending motion, Plaintiffs note that after they filed charges of discrimiantion with the EEOC, the charges were "vigorously defended with both defendants

---

[26] Rec. Doc. 33.

[27] Rec. Doc. 34.

[28] Rec. Doc. 15-1 at p. 1.

[29] *Id.* at p. 2.

[30] *Id.* at pp. 2-3 (citing *Millan v. USAA Gen Indem. Co.*, 546 F.3d 321, 325 (5th Cir. 2008)).

[31] *Id.* at p. 3.

submitting affidavits and lengthy briefs to the EEOC."[32] Therefore, Plaintiffs claim that "Defendants cannot be prejudiced in this matter because they were aware of and vigorously defended these same charges since their inception."[33]

Plaintiffs also explain that shortly after the filing of this suit, their counsel withdrew from his prior law firm; the case files he intended to take with him were boxed and indexed, but this particular case was not included in that index.[34] Plaintiffs' counsel opines that this may be because he is the husband of Plaintiff Chenevert, and therefore this case was not entered into the firm's regular filing system.[35] Notices of counsel's new address were "set up in reliance on the index."[36] Plaintiffs' counsel claims that it was not until this matter was placed on the Court's call docket that his oversight was detected. After notification, Plaintiffs' counsel claims he issued a letter to Defendants enclosing a copy of the suit with a waiver of service and summons form, but neither defendant responded.[37] In addition, Plaintiff's counsel informs the Court that during this entire time he was also being treated for serious medical problems including follow up treatment for a heart attack and two cancer surgeries.[38]

---

[32] Rec. Doc. 26 at p. 3.

[33] *Id.*

[34] *Id.*

[35] *Id.*

[36] *Id.* at pp. 3-4.

[37] *Id.* at p. 4.

[38] *Id.*

Relying on a decision from the District of Arizona, Plaintiffs claim that Rule 4 should be "given a liberal and flexible construction."[39] Further, Plaintiffs again claim that through the EEOC process, Defendants were on notice of this litigation and therefore were not prejudiced by the untimely service.[40]

### C. Defendants' Reply

In reply, Defendants produce a time line of events relative to this matter. Defendants note that Plaintiffs filed suit on the last possible day before their statute of limitations would have expired, requested issuance of summons on the last possible day, but took no action to have the summons served, served Defendants with the suit two months after summons was issued and 230 days after filing suit, and requested a continuance of the pending motion on the day before its submission date, after failing to timely oppose the motion, citing medical reasons.[41] Further, Defendants argue that Plaintiffs' given reasons do not meet the standard for good cause as articulated by the Fifth Circuit.[42]

Specifically, Defendants argue that the Fifth Circuit has previously held that a failure of communication between attorneys will not suffice to create good cause under Rule 4(m).[43] Defendants also contend that district courts from within this Circuit, and outside this Circuit, have been resistant to find that an attorney's illness provides good cause for untimely service.[44]

---

[39] *Id.* at p. 5 (citing *Justice v. Lyng*, 716 F.Supp. 1567, 1569-70 (D. Ariz. 1988)).

[40] *Id.*

[41] Rec. Doc. 32 at pp. 1-2.

[42] *Id.* at p. 3 (citing *Lambert v. United States*, 44 F.3d 296, 299 (5th Cir. 1995)).

[43] *Id.* at pp. 3-4 (citing *Flores v. Sec. of the Navy*, 51 F.3d 1044 (5th Cir. 1995)).

[44] *See id.* at pp. 4-5 (citing cases).

Moreover, Defendants argue that the record reflects that the delay was not caused by the reasons proposed by Plaintiffs, but instead by Plaintiffs' counsel's unfamiliarity with federal procedure. Defendants note that Plaintiffs' counsel did not request issuance of summons when suit was filed, and only requested issuance once the matter was placed on the call docket.[45] Thereafter, even after the Clerk of Court issued summons on February 6, 2013, Plaintiffs' counsel made no effort to have it served until April 5, 2013.[46] Finally, Defendants again note that counsel failed to timely oppose the pending motion or seek additional time to oppose the motion until the day before the submission date.[47] Defendants recognize that even in the absence of good cause, this Court may, in its discretion, still allow Plaintiffs leave to untimely serve their complaint, but request that the Court not.[48]

Additionally, Defendants argue that they have been prejudiced by this delay, and claim that the Fifth Circuit has expressly held that actual notice is insufficient to satisfy Rule 4's standards.[49] Defendants contend that separate from the issue of notice, the delay risks witnesses becoming unavailable, memories becoming less reliable, and documents becoming more difficult to locate.[50] Finally, Defendants argue that the Court should not consider that Plaintiffs' claims may now be time-

---

[45] *Id.* at p. 6.

[46] *Id.* at p. 7.

[47] *Id.*

[48] *Id.*

[49] *Id.* (citing *Way v. Mueller Brass Co.*, 840 F.2d 303, 306 (5th Cir. 1988)).

[50] *Id.* at p. 8.

barred if dismissed, because the "good cause" inquiry relates not to the severity of the consequences faced, but rather to the reason the party failed to perfect service.[51]

### III. Law and Analysis

#### A. Law- Federal Rule of Civil Procedure 4(m)

Federal Rule of Civil Procedure 4(m) provides:

> Time Limit for Service. If a defendant is not served within 120 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

In *Newby v. Enron Corp.*,[52] the Fifth Circuit explained the inquiry into whether "good cause" exists:

> To establish good cause, a plaintiff has the burden of demonstrating "*at least* as much as would be required to show excusable neglect...." *Winters v. Teledyne Movible Offshore, Inc.*, 776 F.2d 1304, 1306 (5th Cir.1985). "[S]imple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice...." *Id.* In addition, "some showing of 'good faith on the part of the party seeking an enlargement and some reasonable basis for noncompliance within the time specified' is normally required." *Id.* (quoting Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1165 (1969)). It is "irrelevant that the defendant not served within the 120–day period later finds out about the suit or is in fact later served, so long as there was not good cause for the failure to serve within the 120 days." *Id.* at 1305–06.[53]

Further, "even if good cause is lacking, the court has discretionary power to extend time for service."[54] It is only when good cause exists that a district court *must* extend the time for service.[55]

---

[51] *Id.* at p. 9 (citing *Pellegin & Levine, Chartered v. Antoine*, 961 F.2d 277, 283 (D.C. Cir. 1992)).

[52] 284 F. App'x 146 (5th Cir. 2008).

[53] *Id.* at 149 (emphasis and alterations in original).

[54] *Id.* (citing *Thompson v. Brown*, 91 F.3d 20, 21 (5th Cir. 1996)).

[55] *Id.*

*B. Analysis*

**1. Existence of "Good Cause"**

As noted above, if good cause exists, this Court must extend the time for service. Plaintiffs have asserted two grounds they allege demonstrate good cause for their delay. First, Plaintiffs claim that their counsel left his law firm and inadvertently did not include this case on his index, and therefore he forgot to take any action. This is clearly a "mistake of counsel," which the Fifth Circuit has expressly held is insufficient to establish good cause in this context.[56] Further, it seems implausible that this was even the actual reason for the delay, as Plaintiff Chenevert's husband is Plaintiffs' counsel; as such, it appears unlikely that this case would slip his mind. If his failure instead was caused by his unfamiliarity with this Court's rules and procedures, that as well would fail to establish good cause.[57]

Second, Plaintiffs' state that their counsel had serious medical issues during the pendency of this suit, which caused him "to miss a great deal of work and reduced [his] work hours."[58] However, Plaintiffs do not expressly contend that their counsel's illness was the cause of the delay.[59] The record reflects that despite counsel's medical issues, he still took action in this suit. For instance, on February 5, 2013, the last day before the call docket, Plaintiffs' counsel requested that summons be issued, but took no action to have them served.[60] It was only on April 5, 2013 that Plaintiffs'

---

[56] *Winters*, 776 F.2d at 1306.

[57] *See id.*

[58] Rec. Doc. 26 at p. 4.

[59] *See id.*

[60] Rec. Doc. 8.

counsel formally served the summons and complaint.[61] As Plaintiffs' counsel was taking action in this suit despite his illness, this Court finds that there was no reason that counsel could not have timely served the Defendants. Again, "simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice" to establish good cause.[62] Likewise, district courts within this Circuit have declined to find good cause where plaintiffs did not "adequately explain why their attorney's illness prevented [them] from [timely] serving" the defendants.[63] As such, the Court finds that the Plaintiffs have not established good cause to require this Court to extend the time for service under Rule 4(m).

### 2. Extension of Time to Serve in the Absence of Good Cause

As noted above, even in the absence of good cause a district court has the discretion to extend the period of time for service.[64] A district court's decision to not grant such an extension is reviewed for an abuse of discretion.[65] However, relevant here, when a dismissal without prejudice would functionally act as a dismissal *with* prejudice, because the statute of limitations has run, the Fifth Circuit will review such a dismissal under the dismissal with prejudice standard of review.[66] In *Berry v. CIGNA/RSI-CIGNA*,[67] the Fifth Circuit described how it reviews such dismissals:

---

[61] Rec. Doc. 13; *see also* Rec. Doc. 32 at p. 2.

[62] *Winters*, 776 F.2d at 1306.

[63] *See, e.g.*, *Estate of White v. Hartford Life and Acc. Ins. Co.*, No. 07-00145, 2007 WL 7217079, at *3 (S.D. Tex. Oct. 11, 2007).

[64] *See Newby*, 284 F. App'x at 149.

[65] *Gartin*, 289 F. App'x at 693.

[66] *Id.* (citing *Berry v. CIGNA/RSI-CIGNA*, 975 F.2d 1188, 1191 (5th Cir. 1992)).

[67] 975 F.2d 1188.

We will affirm dismissals with prejudice for failure to prosecute only when (1) there is a clear record of delay or contumacious conduct by the plaintiff, and (2) the district court has expressly determined that lesser sanctions would not prompt diligent prosecution, or the record shows that the district court employed lesser sanctions that proved to be futile. Additionally, in most cases where this Court has affirmed dismissals with prejudice, we found at least one of three aggravating factors: (1) delay caused by [the] plaintiff himself and not his attorney; (2) actual prejudice to the defendant; or (3) delay caused by intentional conduct.[68]

Here, the Court acknowledges that there is a clear record of delay in this matter by Plaintiffs' counsel, but not necessarily by Plaintiffs. Further, the Court does not find that lesser sanctions would not prompt diligent prosecution or would prove futile, as no other sanctions have yet been imposed or requested. Further, there is no accusation that this delay was caused by intentional conduct. These findings all caution towards allowing the extension of time to serve.[69]

Finally, the Court must consider whether the delay in service caused actual prejudice to Defendants. Defendants do not deny that they have been on notice of the allegations contained in this suit for quite sometime, as they participated in the EEOC process. Further, Defendants do not dispute that they were made aware of this specific action at a time before they were formally served, when Plaintiffs' counsel issued both defendants letters which included a copy of the suit and a waiver or service and summons form.[70] However, Defendants rely on *Way v. Mueller Brass Co.*,[71] to claim that their actual notice of this suit has no effect on their actual prejudice.[72]

For the following reasons, the Court finds *Way* inapplicable here. In *Way*, upon considering

---

[68] *Id.* at 1192 (internal footnotes, citations, and quotations marks omitted) (alterations in original).

[69] *See id.*

[70] *See* Rec. Doc. 26 at p. 4.

[71] 840 F.2d 303 (5 th Cir. 1988).

[72] Rec. Doc. 32 at p. 7.

whether service was effective and served upon the proper party, the Fifth Circuit held that if an incorrect party was served "[t]he defendant's actual notice of the litigation [] is insufficient to satisfy Rule 4's requirements."[73] Here, the consideration is not whether service was made upon the proper party, but rather if Defendants' prior knowledge of the action mitigated any prejudice they might have suffered from untimely service. The Court finds that it did.

Additionally, Defendants claim prejudice because delays can cause "witnesses [to] becom[e] unavailable, memories [to] becom[e] less reliable, and documents to becom[e] more difficult to locate."[74] However, Defendants only raise the possibilities of these obstacles, without actually alleging that any of these concerns have actually occurred. As such, these concerns are merely speculative and do not support dismissal.

Finally, the Court notes that the delay in service has not resulted in Defendants missing any deadlines or conferences, or forced them to complete discovery in a more limited time than other parties. Defendants' counsel participated in the scheduling conference on August 1, 2013, which resulted in the Scheduling Order which established all deadlines, cut-off dates, and the trial date.[75] Defendants have not missed the preliminary conference with the Court set for October 1, 2013, and the June 6, 2014 trial date provides them with ample time to prepare this case and file any necessary motions. Moreover, although not controlling, the Court notes that at least one district court within this Circuit has extended the time for service, in the absence of good cause, even when the defendant

---

[73] *Id.* at 305-06.

[74] Rec. Doc. 32 at p. 8.

[75] Rec. Doc. Nos. 35, 37.

was not served until two weeks before the discovery deadline set in the scheduling order.[76] Therefore, the Court finds that dismissal of Plaintiffs' claims is not appropriate here. Accordingly, Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(5) is denied.

## IV. Conclusion

For the reasons stated above, the Court will deny Defendant's motion seeking dismissal based upon Plaintiffs' failure to timely effect service, and the Court will exercise its discretion and extend the time to effect service to encompass the time when Defendants were actually served in this matter. Accordingly,

**IT IS HEREBY ORDERED** that Defendants' "Motion to Dismiss Under Rule 12(b)(5)"[77] is **DENIED**;

**IT IS FURTHER ORDERED** that the Court extends the time for service to encompass the time when Defendants were actually served in this matter.

**NEW ORLEANS, LOUISIANA**, this <u>29th</u> day of August, 2013.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[76] *See Estate of White*, 2007 WL 7217079 at *4.

[77] Rec. Doc. 15.

14